UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY CALDWELL,

                Petitioner,              Case Number: 20-10576
                                              Honorable Linda V. Parker

v.

KRIS TASKILA,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Timothy Caldwell has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his plea-based armed robbery conviction. Mich. Comp. Laws § 750.529. He maintains that his guilty plea was involuntary and unknowing because he was not competent to enter the plea and because he was denied the effective assistance of counsel. The Court finds no basis for habeas corpus relief and denies the petition. The Court also denies a certificate of appealability and grants Caldwell leave to proceed *in forma pauperis* on appeal.

## I.     Background

On November 27, 2012, Caldwell pleaded guilty to one count of armed robbery in the Circuit Court for Oakland County, Michigan.[1]  Caldwell admitted that, on January 22, 2012, he entered a hotel in Troy, Michigan, armed with a pistol and approached the front desk clerk, Monica Montague.  While brandishing the gun, Caldwell took money, a computer, and a cell phone from Montague.

On the date set for sentencing, January 2, 2013, defense counsel informed the court that the parties had relied on an incorrect calculation of the sentencing guidelines during plea negotiations.  The trial court stated that Caldwell would be permitted to file a motion to withdraw the plea because of the error.  Caldwell informed the court that he did not want to withdraw the plea and would proceed with sentencing.  He was sentenced to 20 to 40 years in prison.

Caldwell was appointed appellate counsel.  On March 7, 2013, appointed appellate counsel filed a motion to withdraw as counsel.  The court granted the motion.  In December 2013, Caldwell filed a motion to appoint counsel and reinstate his appeal, which the trial court denied.

---

[1] The plea transcript shows that Caldwell entered a guilty plea.  (ECF No. 13-9 at Pg ID. 284-289.)  The judgment of sentence indicates that Caldwell pleaded no contest.  (ECF No. 13-17 at Pg ID 698.)  The Court's decision would not be impacted or its analysis changed by resolving this discrepancy so it will not do so.

In 2016, Caldwell filed a motion for relief from judgment claiming that he was incompetent to enter a guilty plea, his defense counsel was ineffective for failing to object to the scoring of offense variables, and appellate counsel was ineffective for filing a motion to vacate appointment of counsel without conducting a proper investigation. The trial court denied the motion. (ECF No. 13-11 at Pg ID 301-08.) Caldwell raised the same claims in an application for leave to appeal filed in the Michigan Court of Appeals. The Michigan Court of Appeals denied leave to appeal. *People v. Caldwell*, No. 337632 (Mich. Ct. App. Sept. 15, 2017). The Michigan Supreme Court, in lieu of granting leave to appeal, remanded the case to the trial court for the appointment of substitute appellate counsel. *People v. Caldwell*, 913 N.W.2d 296, 297 (Mich. 2018). The Michigan Supreme Court ordered that, once appointed, substitute counsel "may file an application for leave to appeal in the Court of Appeals for consideration under the standard for direct appeals, and/or any appropriate postconviction motions in the circuit court." *Id.*

Substitute counsel filed a motion for resentencing in the trial court and also asked the court to reconsider the claims raised in Caldwell's motion for relief from judgment. The trial court denied the motion for resentencing and denied reconsideration. (*See* ECF No. 13-13 at Pg ID 318-20.) The Michigan Court of Appeals denied Caldwell's application for leave to appeal "for lack of merit in the grounds presented." *People v. Caldwell*, No. 347230 (Mich. Ct. App. Feb. 26,

3

2019).  On July 29, 2019, the Michigan Supreme Court denied leave to appeal.

*People v. Caldwell*, 931 N.W.2d 321 (Mich. 2019).

Caldwell then filed this habeas corpus petition raising a single claim:

"Petitioner's conviction was obtained by a plea of guilty which was unlawfully

induced and not made voluntarily with an understanding of the proceedings and the

state court decision on this matter is an unreasonable application and/or contrary to

federal law."  Respondent filed an answer in opposition arguing that Caldwell's

claim is meritless.  Caldwell filed a reply brief.

## II.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

AEDPA "imposes a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). This presumption is rebutted only with clear and convincing evidence. *Id.* Moreover, for claims adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.   Discussion

Caldwell seeks habeas relief on the ground that his plea was involuntary because he was incompetent to enter a plea, his defense counsel rendered ineffective assistance, he was not informed of the mandatory statutory minimum sentence during the plea hearing, and he was inaccurately advised that the minimum sentencing guidelines range would be 171 to 285 months.[2]

When a criminal defendant is convicted pursuant to a plea, habeas review is limited to whether the plea was made knowingly, intelligently, and voluntarily. *See United States v. Broce*, 488 U.S. 563, 570 (1989); *Haring v. Prosise,* 462 U.S. 306, 219-20 (1983).  The plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Brady*, 397 U.S. 742, 748 (1970).  The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749.  A plea

---

[2] Caldwell also briefly references a sentencing-related claim in his recitation of facts and procedural history. (*See* Pet. at 8, ECF No. 1 at Pg ID 65.)  He states that the trial court failed to articulate an adequate basis for an upward departure from the sentencing guideline range.  (*Id.*)  It is unclear whether Caldwell intends to assert this claim as an additional basis for habeas corpus relief.  Construing his *pro se* petition liberally, the Court assumes that Caldwell intends to assert this as a separate claim.  The requirement that a sentencing court articulate the reasons for departure from the sentencing guidelines is found in Michigan, not federal, law. *See* Michigan Compiled Laws § 769.34(3).  As such, it does not present a cognizable claim on habeas review.  *See Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only.").

"entered by one fully aware of the direct consequences" is voluntary in a constitutional sense, and the mere fact that the defendant "did not correctly assess every relevant factor entering into his decision" does not mean that the decision was not intelligent. *Id.* at 755, 757 (quotation omitted).

Caldwell raised these claims in state court after he was appointed appellate counsel on collateral review. The Michigan Court of Appeals denied leave to appeal for "for lack of merit in the grounds presented." *People v. Caldwell*, No. 347230 (Mich. Ct. App. Feb. 26, 2019). This type of summary order is presumed to be an adjudication on the merits to which AEDPA deference applies. *See Harrington v. Richter*, 562 U.S. 86, 99-100 (2011). Caldwell offers no basis for rebutting that presumption and the Court finds none. The Court applies AEDPA's deferential standard of review to the state court's decision.

### A.  Competence to Enter a Plea

Caldwell first claims that he was suffering from a mental illness which rendered him incompetent to plead guilty. A criminal defendant may not "plead guilty unless he does so competently and intelligently." *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (citations omitted). The standard governing competence to stand trial is: (1) did the defendant have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding", and (2) did the defendant have "a rational as well as factual understanding of the proceedings

7

against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960).  The competence

to plead guilty is measured by this same standard.  *Godinez*, 509 U.S. at 398.

Caldwell fails to show that he was incompetent to enter a plea or that the

trial court was obligated to hold a competency hearing.  In May 2012, the trial

court referred Caldwell to the Center for Forensic Psychiatry (CFP) for evaluations

of his competence to stand trial and for criminal responsibility.  The CFP found

Caldwell competent to stand trial, explaining that he had an accurate understanding

of the legal system in general and of the charges against him specifically.  (ECF

No. 13-6 at Pg ID 262-63.)  Further, Caldwell was found to be "motivated to

achieve the best possible outcome for himself" in the criminal proceeding and

capable of rationally collaborating with his attorney toward that end."  (*Id.* at Pg ID

263.)  Regarding criminal responsibility, the CFP determined that Caldwell did not

meet the statutory criteria for legal insanity.  (ECF No. 13-8 at Pg ID 280-81.)

Caldwell was described as "a man of at least average intelligence" who "did not

lack the substantial capacity to appreciate the nature, quality or wrongfulness of his

conduct, or the substantial capacity to conform his conduct to the requirements of

the law."  (*Id.*)

Caldwell argues that, despite these evaluation results, the trial court was

required to hold a competency hearing.  Where there is a "bona fide doubt" as to a

defendant's competence to stand trial, a court has a duty to hold a competency

8

hearing.  *Pate v. Robinson*, 383 U.S. 375, 385-86 (1966).  "[E]vidence of a

defendant's irrational behavior, his demeanor at trial, and any prior medical

opinion on competence to stand trial are all relevant in determining whether further

inquiry is required," and "one of these factors standing alone may, in some

circumstances, be sufficient."  *Drope v. Missouri*, 420 U.S. 162, 180 (1975).  But

there are "no fixed or immutable signs" of incompetence "which invariably

indicate the need for further inquiry to determine fitness to proceed."  *Id.*  If

"before or during trial 'sufficient doubt' arises about a defendant's competence –

'the capacity to understand the nature and object of the proceedings against him, to

consult with counsel, and to assist in preparing his defense' – the trial court should

order a competency hearing."  *Cowans v. Bagley*, 639 F.3d 241, 247 (6th Cir.

2011) (quoting *Drope v. Missouri*, 420 U.S. 162, 180 (1975)).  The question for a

reviewing court is "[w]hether a reasonable judge . . . should have experienced

doubt with respect to competency to stand trial."  *Mackey v. Dutton*, 217 F.3d 399,

413-14 (6th Cir. 2000) (quotation omitted).

Here, the trial court was not unreasonable in failing to hold a competency

hearing after Caldwell was found competent to stand trial and not legally insane.

To be sure, Caldwell appears to have a history of mental health and behavioral

issues.  But that history was considered by the CFP when evaluating Caldwell's

competence.  (*See* ECF No. 13-6 at Pg ID 259, 261-62.)  Caldwell reported that

someone diagnosed him with schizophrenia, but the CFP examiner saw no evidence of psychosis during interviews which was "inconsistent with a diagnosis of schizophrenia." (ECF No. 13-8 at Pg ID 275.) And, in any event, a defendant's previous diagnosis of schizophrenia does not automatically require a competency hearing. *United States v. Alfadhili*, 762 F. App'x 264, 267 (6th Cir. 2019). This is so because a mentally ill person may still have the ability to consult with his attorney and understand the proceedings against him. *Id.* Indeed, there were no objective indications that Caldwell was incompetent to enter a plea. His responses at the plea hearing were coherent and reflected an understanding of the proceedings.

In sum, Caldwell fails to present any evidence to rebut the state court's finding of competence or to show that, under these circumstances, a reasonable judge would have held a hearing. Thus, the state court's denial of this claim was not based on an unreasonable determination of the facts or an unreasonable application of Supreme Court precedent.

## B. Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient, and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). In

the context of a claim that counsel was ineffective during plea negotiations, the prejudice prong is satisfied by demonstrating: (1) "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court"; (2) "the court would have accepted its terms"; and (3) "the . . . sentence . . . under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

### 1.

First, Caldwell argues that he entered his plea after being "completely misled" about his possible sentence and there is a reasonable probability that he would not have pleaded guilty if he had not been misled. He also claims that defense counsel was ineffective for not moving to withdraw Caldwell's plea once the guideline error was realized.

Defense counsel and the prosecutor believed the minimum sentence guidelines would be 81 to 135 months. (ECF No. 13-10 at Pg ID 294.) Plea negotiations and Caldwell's decision to plead guilty were based on this erroneous calculation.[3] (*Id.* at Pg ID 294-95.) Defense counsel learned two weeks prior to

---

[3] Caldwell contends that his attorney is to blame for the erroneous calculation. The record shows that defense counsel and the prosecutor both believed this was the correct calculation. Identifying which party made the initial erroneous calculation has no bearing on this Court's decision and, therefore, need not be resolved.

11

sentencing that the correct guideline score was 171 to 285 months. (*Id.*) During the sentencing hearing, defense counsel informed the court about the error and indicated he had discussed the matter with Caldwell and was prepared to move to withdraw the plea. (*Id.*) The trial court stated that a motion would be accepted and the sentencing adjourned. (*Id.*)

But counsel informed the court that Caldwell no longer wanted to withdraw his plea after hearing the victim, Monica Montague, speak and in light of "other considerations." (*Id.* at Pg ID 295.) Montague's statement was thoughtful, tempered, and compassionate. (*See* ECF No. 13-10 at Pg ID 292-94.) She spoke eloquently about conflicting emotions – fear, retribution, punishment, and forgiveness. At one point, Caldwell apologized to Montague which she said meant "more than anything."[4] (*Id.* at 294, 297.)

Caldwell fails to show that defense counsel's incorrect guidelines calculation (or reliance on someone else's incorrect calculation) rendered his performance deficient. An attorney's mistaken guidelines calculation, generally, is insufficient to show counsel performed deficiently. *See United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir. 1989) (holding that a "mistaken prediction" of the sentencing guidelines range should not be characterized as ineffective assistance of counsel);

---

[4] The trial court judge later stated that he intended to impose a lengthier sentence, but Caldwell's apology and acceptance of responsibility persuaded the court not to do so. (ECF No. 13-10 at Pg ID 299.)

*Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) ("[m]isinformation from a defendant's attorney, such as an incorrect estimate of the offense severity rating, standing alone, does not constitute ineffective assistance of counsel.").

Caldwell also cannot show that he was prejudiced by the mistake. The trial court offered him the opportunity to move to withdraw the plea, but Caldwell chose not to do so. Caldwell renewed his request to plead guilty under the corrected sentencing guidelines. In other words, he made the same decision once the mistake was corrected and, therefore, suffered no prejudice.

Caldwell also argues that defense counsel did not adequately consult with him prior to accepting Caldwell's decision not to move to withdraw his plea. The decision clearly rested with Caldwell. Further, Caldwell did not dispute that before the sentencing hearing he and defense counsel discussed the guidelines error and filing a motion to withdraw the plea. The trial court ensured Caldwell understood the proceedings, by carefully explaining that counsel could file a motion to withdraw the plea and, if the court granted the motion, Caldwell could withdraw his plea and proceed to trial. (*Id.* at Pg ID 295-96.) Caldwell's answers were responsive, he stated he made the decision freely and voluntarily and affirmed that he did not wish to withdraw his plea. (*Id.* at 296.) Under these circumstances, defense counsel was not required to ask for an adjournment to discuss the decision with Caldwell. *See United States v. Tarpley*, 295 F. App'x 11, 16 (6th Cir. 2008)

13

(finding no prejudice where the court denied a motion to adjourn where the defendant had time to review and discuss an original report with counsel and failed to show that any differences in an amended report would have been objected to if defendant and his attorney had been given time to discuss it). On this record, Caldwell has not shown that counsel performed deficiently in honoring his decision to proceed with his plea.

2.

Caldwell also argues that counsel was unprepared for sentencing. He points to counsel's statement, "I was not prepared to address this today." (ECF No. 13-10 at Pg ID 296.) Counsel's statement, considered in context, clearly references his expectation that sentencing would be adjourned because Caldwell would move to withdraw his plea. It does not convey that counsel was ineffective at sentencing.

Caldwell argues that counsel presented only aggravating circumstances on Caldwell's behalf. Defense counsel did summarize Caldwell's history of mental health issues. (*See id.* at Pg ID 296-97.) This information was offered in an attempt to mitigate Caldwell's culpability. (*See id.* at Pg ID 297.) Caldwell concludes that this information amounted to aggravating, rather than mitigating, evidence. At the same time, Caldwell maintains that counsel should have presented additional evidence regarding his mental health history. It was not

unreasonable for counsel to argue that Caldwell's mental health issues lessened his culpability.

Caldwell also does not show counsel's argument prejudiced him. Ultimately, the court stated that, in addition to the circumstances of the robbery, the sentence was based upon the fact that Caldwell was on probation for home invasion when he committed this offense, he led police on a dangerous high-speed chase before he was apprehended, and, as a mitigating factor, that he accepted responsibility for his actions.  (ECF No. 13-10 at Pg ID 298-99.)

3.

Finally, Caldwell claims that counsel's performance was so deficient that he was constructively deprived of counsel and the Court, therefore, should presume prejudice under *United States v. Cronic*, 466 U.S. 648 (1984). The *Cronic* presumption of prejudice applies "only where the constructive denial of counsel and the associated collapse of the adversarial system is imminently clear." *Moss v. Hofbauer*, 286 F.3d 851, 860 (6th Cir. 2002)  Caldwell has not shown that counsel's performance was deficient, let alone so deficient as to amount to the constructive denial of counsel.

**C.  Mandatory Minimum Sentence**

Caldwell claims that his plea was not knowing and voluntary because neither counsel nor the court advised him that his armed robbery conviction carried a two-

year mandatory-minimum sentence.  He asserts that this failure violated Michigan Court Rule 6.302(B).  Habeas review "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States," and does not encompass the reexamination of state-court determinations of state-law issues. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  So habeas relief is not available to correct the state court's alleged violation of Rule 6.302(B).

"[F]laws in statements regarding sentencing exposure do not necessarily render a plea involuntary so long as the defendant understood the consequences of the plea." *Vanrhee v. Parish*, No. 20-1127, 2020 WL 8511717, at *2 (6th Cir. July 6, 2020) (citing *United States v. Hogg*, 723 F.3d 730, 744–45 (6th Cir. 2013)).  A failure to advise a defendant of a mandatory minimum sentence warrants resentencing only where the omission "affects substantial rights." *Williams v. United States*, 47 F. App'x 363, 366-67 (6th Cir. 2002) (quoting *United States v. Syal*, 963 F.2d 900, 906 (6th Cir. 1992); *United States v. Bashara*, 27 F.3d 1174, 1179-80 (6th Cir. 1994).  The question is "whether it is likely the defendant misjudged the consequences of his plea in light of [the omission] so that he must be allowed to withdraw his plea." *Williams*, 47 F. App'x at 367 (quoting *United States v. Santo*, 225 F.3d 92, 100 (1st Cir. 2000)).

The Michigan court's determination that Caldwell was not entitled to relief based on this omission was not contrary to or an unreasonable application of

clearly establish federal law. Even if the record supported Caldwell's claim that he was not informed of the mandatory minimum sentence, he admits that he expected to receive a sentence at the low end of the original guidelines, which was eight years. (*See* ECF No. 1 at Pg ID 75, 77.) The record does not support a finding that Caldwell would not have pled guilty if he had been informed of the far lower two-year mandatory minimum. *See, e.g., United States v. Williams*, 899 F.2d 1526, 1531 (6th Cir. 1990) (finding harmless error even if the defendant was not informed of the mandatory minimum term of supervised release). In other words, Caldwell made the decision to plead guilty aware that the guidelines provided a lower-end sentence of eight years. Moreover, a defendant's substantial rights are not violated due to the failure to advise the defendant of the mandatory minimum sentence where the defendant's actual sentence is far less than the statutory maximum. *See United States v. Bashara*, 27 F.3d 1174, 1179-80 (6th Cir. 1994) (citing *United States v. Bachynsky*, 934 F.2d 1349 (5th Cir. 1991)), superseded on other grounds by statute as recognized in *United States v. Caselorente*, 220 F.3d 727, 734 (6th Cir. 2000); *see also United States v. Whitsell*, 481 F. App'x 241, 243 (6th Cir. 2012) (finding no infringement on the defendant's substantial rights even if misinformed regarding mandatory minimums); *United States v. Syal*, 963 F.2d 900, 906 (6th Cir. 1992) (explaining that "[s]ubstantial rights may not be affected when a defendant is informed of the maximum penalty and that penalty markedly

exceeds the penalty the defendant received, including the period of supervised release and any additional incarceration time that might result from violation of the supervised release condition.").

For these reasons, the Court does not find that Caldwell's claim entitles him to habeas relief.

## IV.   Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 336 (2003) (internal quotes and citations omitted).

The Court finds that jurists of reason could not debate the conclusion that Caldwell has failed to demonstrate an entitlement to habeas relief.  A certificate of appealability is denied.

The Court grants Caldwell leave to appeal *in forma pauperis* because an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner may proceed in forma pauperis on appeal if he chooses to appeal this decision.  28 U.S.C. § 1915(a)(3).

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: May 1, 2023

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, May 1, 2023, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan
Case Manager